24-2946. Each side has 20 minutes. Good morning. Good morning, Your Honors. Richard Jaffe for the Plaintiff's Appellants. I'd like to reserve five minutes, if possible, for the court. May it please the court. I'd like to do a couple things today. First thing I'd like to talk about is the context of the case. And I think that's important because this is now what I would call the second battle in what I'm calling the COVID misinformation wars. The first battle was AB 2098, and I believe in this court facility, some of the members of the court actually heard the McDonald v. Lawson appeal. And I think it's important to understand that this battle, these wars, really started in early 2022 with the legislature considering AB 2098 and the medical board introducing, basically saying that they're going to adopt the federation's policy of July 21. So the context of the case is, for now almost two or three years, the courts and the country have been dealing with how do you deal with information, controversial information, and I know that's something two of the judges are familiar with, controversial information. How does the country deal, and that may be against the mainstream narrative. How do they deal with that? Well, I have to say just as a matter of personal thing, one of the members of the panel has actually, what I think, created the modern law of physician speech, and that was basically Conant v. Walters. Up until that time, I don't think it was clear what the rights of physicians were. It wasn't clear, because historically speaking, and let me just digress a little bit. We talked about this in the briefing. You had Justice Jackson talking about, in effect, the dichotomy between speech to clients and speech to public, which is adopted by Justice White in SEC v. Lowe. Until that point, it could have gone either way. We could have had the law that everything within the confines of a doctor-patient relationship was fair game to the board, based on those two decisions, but we didn't, because Judge Schroeder and her colleagues created the concept that information and advice is fully protected speech. That was, in my view, quite novel. It could have been the other way. Then what happened in Pickup is, I personally think that what the panel in Pickup did is they sort of adopted Jackson's and White's view about giving no protection or less protection to speech in the confines of a relationship, and they split the baby. They basically did a Solomonic split, and they created this middle ground of intermediate scrutiny. I think the critical part of this case is that the speech in the intermediate scrutiny was the same speech that was fully protected in Conant, but was now given intermediate scrutiny. It was still protected, and why is that important? Because even though this sexual orientation therapy was dangerous, every medical association thought it could harm patients. They were saying it was going to kill kids by trying to convince them not to be gay. It was highly controversial. The auto-opinion, which this court has a disagreement with, has an extensive analysis of the controversy there. Even SB 1172, the first part of it is just a list of every single medical organization that was opposed to this speech. Well, with the psychotherapy part of it, the conduct itself, that's the treatment. Exactly. Yours is a little trickier because I think, obviously, because we have the medical board and the DO board, obviously, I think we can probably all agree at some level have a right to evaluate the treatment that doctors are giving to their patients, and certain conduct would fall below the standard of care. Can you clarify whether you're bringing a facial or an as-applied challenge to 2234? Yes, ma'am. We are not making a facial challenge to the words of Section 2234C, and we are not making an as-applied challenge with respect to the doctors, the plaintiffs in this case. I think that's how the case has been misinterpreted. The case we are bringing is, we're saying that we know there's a policy in practice. We know from Kristen Lawson's statement, we know the context of the case. For three years, the medical board has been trying to regulate this kind of contact. Can I interrupt for a clarification? You say something about as-applied. You say we're not bringing an as-applied challenge with respect to these plaintiffs. Did I misunderstand you? I'm having trouble understanding what you mean when you're talking about as-applied. An as-applied challenge is basically a challenge brought by certain parties that's only going to apply to those parties. Our case is, we are seeking a ruling on the policy in practice . It's a facial challenge to a policy in practice. That doesn't make any sense. The court found you didn't have standing for an as-applied challenge. We're not making an as-applied challenge. We're making a challenge to a policy in practice. There's all kinds of... Facial challenge, that doesn't make any sense. Counsel, can I ask, what is it that you are challenging? What happened that brings you into court? What is there? That has to do with the context. Originally, we came into court because there was a statute. What happened was, because Judge Shub, in my opinion, because Judge Shub issued the preliminary injunction, and because of the frosty reception this court gave to the government, they withdrew the law under SB 815. At the same time they withdrew the law, the spokesman for the bill's author of 2098 said, they can still do what they're going to do under the general statute. At the same time, the same article presented one case where they've already done it. That's an as-applied challenge. That's not a facial challenge. Are you challenging the statement of the legislator? I don't understand what it is out there that you're challenging that might be applied. In February 2022, the president of the medical board issued, essentially said she's adopting the federation's policy. She put that in the record in the case. That statement constitutes correctly or incorrectly a policy. It's a policy. Policies can be challenged. They're not necessarily as-applied challenge. Don't ask, don't tell. Informal action can be challenged. I think there's a case by Judge Brennan about this phantom books. Informal action can be challenged. It doesn't make it an as-applied challenge. We are saying that... Help me understand what exactly is it that your clients are challenging and how are they doing it? This case keeps slipping away from me. I don't understand exactly what they say is protected conduct that they're forbidden from doing. Providing what forbids it. What forbids it is the policy and practice. You said forbids it. Forbids what? Okay. The speech that is forbidden is information and opinions which are not consistent with what I call the mainstream COVID narrative. The specific examples of that, the big examples would be the safety and efficacy of vaccines. But if it's a general statement, we know that's protected. That's what NIFLA tells us. But what you're challenging is a specific treatment statute that talks about treatment. With respect, Your Honor, let me be very, very clear. We are not asserting that there's a First Amendment right for Dr. Corey or any doctor to write a prescription for ivermectin or HCQ or anything. I think everyone is clear, and this is what was made clear in Conant. The writing of a prescription is a medical act, which is within the heartland of what medical boards do. There's no doubt about that. The issue in this case is whether or not doctors can tell patients, can give them information, can make recommendations that... I understand what you're saying, but it makes a difference whether it's a facial challenge or an as-applied challenge. Because a facial challenge, and Judge Shub said this, that it regulates conduct here. And so it's not facially infirm under that basis. The question just is, and they can regulate the standard of care and what the doctor actually does. But it's different than the conversion case, because along with what you do, what you decide to do, you also give the person information. So what part of that information is part of the conduct? Or what part of... And I'm going to ask the government these questions. Where in the process of advising someone can you talk about the risks, the benefits, and all of that? Or where does that become speech as a part? Because it would appear that the Rena, if you looked at her complaint, they were roping in some of her language as part of the conduct that they intended to regulate. So what part of the discussion that a doctor has with a patient is part of the conduct? I think the answer to that question is from the case law. I think we know that when the speech is the scalpel, that's unprotected. That's tingling. And I think the issue is, the speech is conduct only if it's incidental to some treatment. And this case is not about that. It's not about Dr. Corey, for example, eventually writing the prescription. I think it's clear in the case law. I don't think it is what it is. It's clear in the case law. If Dr. Corey writes a prescription for ivermectin, then the discussion or the informed consent prior to that would be incidental to the conduct. But what happens in COVID now is you don't have to even read papers to know that you don't have to go to a doctor's office and pay an office visit to get the vaccine. Is recommending the use of ivermectin or recommending that a patient not take a COVID vaccine speech incident to the treatment? What treatment? I would say the answer to the question definitively for me, you might not like the answer and you might not, is that no. Just based on CONIT and PICOP, information and recommendations about an illegal or a banned treatment is speech, as long as you don't give the treatment or you don't write the prescription. I take that to be the black law of the law in this case. I'm having trouble getting my bearings in this case. I think you're challenging 2234. Is that right? Actually, no. What I'm challenging is the board's policy. Where is it? Where do we find this? I would say it's the February 2022 statement by the board director, Kristen Lawson, that said that they are adopting the Federation's policy. It's there in black and white. By the way, in this Bantam case, even in formal actions, even coercion. Why did Judge Shub think you were challenging 2234? Because what we are doing, what we made, is we made a variation of what is sometimes called a facial challenge under Foti and Wunsch. There's all different formulations. This goes really to perhaps the confusion. There's a body of case law that says that even if the words of the statute are facially neutral, strict scrutiny, if it applies to a large degree of protected information, that is what Foti called a variation of the facial challenge. You could call it vagueness. Tell me again exactly what it is you're challenging. The board's policy of threatening to sanction doctors. For speaking out to patients against the mainstream COVID narrative. It's very clear policy and that's what the context is about. They've been doing this since early 2022. Yeah, but you're doing it in the purview of 2234 and you're saying 2234 allows that to occur. Like for example, Dr. Reyna in exhibit A, it alleges that Dr. Reyna advised patient A against being vaccinated. And if so, doesn't that mean that the state is enforcing 2234 based on the content of this physician's speech? 2234 is the statutory basis for the implementation of the policy. Anytime the board does something has a policy, it has to have a statutory basis. Oh, so you are challenging 2234? As under Foti and that line of cases, which is not a facial challenge to the words, it's a challenge because the statute is so broad, or you could call it overbreadth. Now, which statute, 2234? 2234.C is so broad that- Wait a minute, just let me read it to you. It says, repeated negligent acts. To be repeated, there must be two or more negligent acts or omissions. Negligent act or omission followed by a separate and distinct departure from the applicable standard of care shall constitute repeated negligent act. And the head for this is unprofessional conduct.  So I don't understand your argument. The argument is that the statute as interpreted to be the basis- That's an as-applied challenge right there. Your Honor, under Foti, that's considered a subset of a facial challenge. That line of cases, which we cited in our brief, which accepts the terms of the statute as being neutral, but it applies to a broad range of conduct, which is protected. And I would argue as a matter of law, as Judge, you said, we know from NIFLA that you can't take a whole category of speech and consider it unprotected. And that's exactly what Judge Shub did. I don't think that's what he did at all. He said, you're challenging the application of 2234. I don't see any allegation here by these plaintiffs that they've alleged any injury to themselves. I mean, on his face, 2234 says we're regulating conduct. That's correct. May I respond? Please, please. Here's the words of Judge Shub that's operative, because what you're referring to is on the standing issue. The substantive part of Judge Shub's decision is basically the following two sentences, and I think you can see clearly what he's doing on the First Amendment issue. And this is from the Record 12-12. And the First Amendment does not prevent a state from performing through speech alone, and that's pick up and tingling. So we know that. And here's the issue. Then, when a doctor speaks in his capacity as the patient's treating physician and incident to his provision of medical care, the physician's words constitute medical care. That is a violation of NIFLA on its face. I disagree. That's not my reading. I'm sorry, Judge Schroeder? I just asked if you wanted to save, you have a minute left. Well, save the time. Sure, I'll take the time. Thank you. I have one minute left for rebuttal? Yeah. Okay, I'll save that. Okay, thank you. Thank you. Good morning. Good morning, Your Honor. Kristen Liska on behalf of the defendants in this case. May it please the court. I'd like to sort of pick up with the colloquy that this court just had with my friend on the other side. I think what plaintiffs here are trying to do is sort of seek an advisory opinion. They want this court to tell them that they can say what they want about COVID, but they don't have standing to do that, as the lower court correctly found below. Their argument is... He doesn't seem to want to have standing on an as-applied challenge. I think there is standing as to an as-applied challenge because I think you have situations where I think the state is creating a... I don't think on a facial challenge, I think it's as-applied. It doesn't seem that you're disavowing certain things. I do think what the accusation of Dr. Reyna is relevant here. It doesn't mean that I'm not sure that you don't litigate the whole thing, but it seems the accusation against Dr. Reyna shows that you will subject physicians to discipline under 2234 for advising patients against being vaccinated. And if you look at Exhibit A at 3, she advised patient A against being vaccinated. If so, doesn't this mean that you are enforcing 2234 based on the content of the physician's speech? Also, the accusation against Dr. Reyna shows that you will subject physicians to discipline under 2234 for advising them to purchase ivernectin, Exhibit A at 4, alleging that Dr. Reyna directed them to purchase this medication. So I think you're not saying that you won't... you're not disavowing that you won't prosecute people for their speech and you acknowledge that they do have a right to a certain amount of speech, but it seems that there's an area of speech incident to treatment and that is everything a doctor talks about to the patient conduct. Some of it is. Some of it's got to be. I think there's a couple things there. I'll start with the standing point that Your Honor just raised and then I can turn to the question about... The other side is totally confusing me because I don't... and saying that they're not challenging 2234. And if I had been judged down there, I think that's totally what he thought they were doing. It's not the prior statute that was withdrawn. It's 2234. So let me start with this question about as applied standing and 2234. I will then turn to your question about conduct and speech, since I do want to make sure I get there, but I'll start with the standing point. Plaintiffs argue that there is this sort of policy or practice, but the evidence that they put forth, and I want to reiterate, we're not here on a motion to dismiss. This isn't about allegations and the complaint. This is a preliminary injunction appeal. So the burden is on plaintiffs to show a substantial likelihood that they're going to prevail on showing standing on the merits. All that we really have is this one allegation, which is one accusation that has been brought in over four years of the pandemic. So the idea that there is a enforcement policy emphasizing COVID, that the board is going after COVID specifically, I think one accusation in four years really pushes back against that idea. Well, but what's your case that said that one's not enough? Standings is a pretty minimal standard. And if they have standing in an as-applied challenge, then the way you evaluate for the preliminary hearing is different, if that was error to deny standing. So if this court looks to a case like the Alaska Right to Life case that we cite in our brief, the question is not, is there a general risk that a statute will be enforced? It's, will it be enforced as to these plaintiffs, the way that they allege it will be enforced? So we don't, we don't argue that they could challenge 2234C generally, facially, because they are subject to it. Our argument is that they have not shown for a pre-enforcement standing that they're likely to face enforcement as to COVID-19 care that they're providing. Well, except for this, it's a little bit like in police work. You can beat the, you can, you know, you can beat the rat, but not the ride. Okay. And so what you're saying is it wasn't relevant, or he couldn't find it or whatever. I think it is relevant, and I think once is enough to make standing. But then even once you, if you have standing, would you concede that it's a different challenge, it's a different standard, or do you think it's still rational basis if you're trying to regulate speech incidental to treatment, to conduct? So let me start with the first point about Dr. Rain. And I do think that if you compare what Dr. Raina was, was that issue in her accusation to what plaintiffs say, I do think it illustrates the difference though. Dr. Raina was not sanctioned simply for saying, I recommend you get the vaccine. If you look at page five of exhibit A, it specifically lists the following advice that fell outside the standard of care. It's about masks, that the COVID-19 vaccines are not true vaccines, that they're produced with aborted fetal cell. And I also want to flag, it's specifically the use of veterinarian ivermectin, and I think that's salient. Because if you look at footnote one on page four, the board explicitly talks about how veterinary ivermectin is not intended for use in humans. And so the board signaled out, not that she's recommending ivermectin, but that she recommended that her patients take veterinarian ivermectin, which includes dosages and ingredients, the board appointed to a single doctor in the entire country who has faced discipline simply because they recommended taking ivermectin. We have a person who recommended veterinary ivermectin, but that's different. They do not say we want to tell our patients that we think the vaccine causes miscarriages. They do not say we want to tell our patients that we think it contains fetal cells. And I don't think that the board would disagree. What do you disagree, what are you saying as the attorney general here? What will, what speech is protected? Put yourself on the record here and tell us and say you're not going to prosecute people for what type of speech. What can they do? So 2234C is targeted at the care that is provided to a patient. And so if a doctor's speech as part of providing that care falls below the standard of care, they can face liability under 2234C. And that is important. There need to be guardrails on what doctors can say to patients. Let's say that, okay, I've gotten, and I'll be, I'm disclosing this, I've gotten every vaccination that anyone would ever give me, you know. I still have had COVID, okay. You know, I've had so many pokes probably drinking this water, you would see the water shooting out of me. So I'm not, I'm not an anti-vaxxer as far as that goes. But in the four years that this has been going on, there's many of us that have had every vaccine and have So there's certainly a discussion that it seems that someone could have to say that vaccinations aren't effective, they're not recommended for certain people. But, or in the mass, that's been a big debate as far as that goes. So how do we know that you're not going to just because it's the Attorney General's philosophy or it's their policy that everyone needs to get, be completely vaccinated, how can someone give that when they're talking to their patients? How can they give them that advice? Say they say, I don't think you should get a vaccination because you're a young man, you're an athlete, I think there's chances that you might have some heart effects. The person doesn't get the vaccine and then they die of COVID. Did their conduct fall below the standard of care? This case is not actually about what the standard of care is. This case is simply about if the state may enforce discipline on physicians who violate it. And if you look at the declarations that talk about the disciplinary process, but what part, but speech is part of that. So what part, what speech is protected for physicians about their view on COVID or their view on masking and what part is integral to the standard of care? I'm advising you not to have a vaccine. So if we're talking about a discussion taking place within the context of an exam room and the speech is coming from the doctor to the patient as part of treating the patient, that is incident to the treatment. I think everything the doctor says is, but that can't be right because so we're, what if the doctor, so you're saying everything that is said as is part of the, is part of the care. The speech that is said as part of care. I know that this sounds maybe like I'm sort of talking in a circle here. It might be helpful.  You're saying, aren't you saying that what the doctor advises the patient to do is part of the care? Yes. What a doctor advises a patient to do when treating them as part of the care they give. And it makes sense that this needs to be something the state can regulate. I mean, if a doctor wants to tell a patient who say has a liver problem, I recommend that you just take Tylenol for your pain. That could be a serious problem because Tylenol interacts poorly with people who have liver issues. So in order to... But what if they want to talk about that vaccines don't work for everyone and I think that with your comorbidity factors, you shouldn't take a vaccine. Is that, are they below the standard of care for talking what their view on vaccines is? So this is, that's a very context and fact specific question. I think the board would agree that there are certainly times where the standard of care is consonant with a doctor, not recommending someone get a vaccine. For instance, a patient... But everything, once you're in the treatment, everything the doctor says has no First Amendment protections. That is part of care, yes. And I think it'd be helpful maybe to step back here and look at what's going on in the Conant case and how that compares and the Nifla case and how that compares to what's going on here. 2234C is a statute targeted at care. We don't care what physicians do and say as long as it is part of, if it's not part of their care and if it is not below the standard of care. If they say things that are within the standard of care, that's fine. They will face no discipline. Conant looked to what the physician said... I think he's saying, but the standard of care that they've said is for everyone to be vaccinated. So how can you talk to someone about the risk and benefits of getting vaccinated without being below the standard of care? Well, I think that I would disagree with the idea that the standard of care is that any person everywhere should be vaccinated. If anything, I think, as I said, I believe the board would agree, and I'm hesitating to state on the record that there's a specific thing that's insider out because this is very fact specific. Who is the patient? What is their history? What are their maladies? Okay, but what you're saying is, but once you go in the treatment room, everything the doctor says is part of their care. The advice... There's no protective speech in that room. In so far as we look at this statute, I think if you had a different statute that looked solely at the speech as divorced from the care, like what's going on in Conant, where it was about what the doctor said, regardless of whether they conformed with professional norms, regardless of how they treated that patient, what they said by itself triggered the sanction. Here, it's only speech in so far as we have care that's occurring. We're ensuring doctors adhere to an orthodoxy. It uses norms set by the medical community themselves, or medical experts involved in the process of evaluating these complaints. It's about protecting patients, and the state has to ensure that when doctors speak while giving care, that they are adhering to a minimum level such that patients are not going to be harmed by receiving substandard care. So, I think this is a qualification with which you would agree. Judge Callahan asked, well, is everything a doctor says in the examination room or the treatment room insulated from First Amendment? Does it say protected under 2234? That can't quite be right. Meaning, if the doctor says in the process of treating the patient, well, you know there's an election coming up. Vote for X or don't vote for Y. Obviously, that's First Amendment. Correct. It seems to me your position is any advice given to the patient with respect to the care of the patient, that comes under 2234. Correct. That's speech incident to the conduct of caring for the patient. Yeah. That seems a pretty straightforward reading of 2234. Yes. That is the position that we take. And plaintiffs have agreed that speech incidents of conduct can be regulated, and that is our position. And I think, you know, maybe something that might also help here with these questions about the standard of care is that the standard of care is not just one specific correct answer. The standard of care is more like a spectrum. There may be situations where different doctors may both agree on different courses of actions. One doctor may say I do X, one say Y. Both of those can be within the standard of care. But what the standard of care does is it kind of takes the things that are really beyond the pale off the table. And, you know, there may be some disputes about the nuances of things like recommending vaccines and masks, but I think everyone would with respect to COVID that are beyond the pale. Recommending drinking bleach. Like don't take horse medicine. Yeah. Don't take horse medicine. Well, but, okay, doctor, is it, I don't know how you pronounce it, Wang or Wong, be subject, what is it? Wong. Wong. Would Dr. Wong be subject to possible discipline under 2234 if she recommends against taking the COVID vaccine? Do you disavow enforcing 2234 in this way? If her recommendation falls below the standard of care based on the facts of that patient and situation, she can be subject to discipline. I just want to make clear that I don't believe the board's position is that if you say don't take the vaccine, you're automatically going to be subject to discipline. Because some patients shouldn't take it. Correct. And maybe the reasons that you're giving are things like citing, referencing, you know, specific studies that exist. You know, it is certainly a situation where a doctor can say here are the pros and cons, that's part of the process, and the board, you know, informed consent laws require this. But, you know, if a doctor's going to come in and say don't take the vaccine because it makes you magnetic, you know, that's something where, yes, the board may sanction that doctor for violating the standard of care. But a doctor who says, given your personal medical history and, you know, what I know about you and your history, I don't think you should take the vaccine, that may well fall within the standard of care. And this really emphasizes the problem with the as applied challenge the plaintiffs are bringing here, is they really just want an order from this court that they can say whatever they want about COVID-19, no matter how far it  Well, would Dr. Tyson be subject to possible discipline under 2234 for informing patients that his research indicates that COVID vaccines lead to heart-related issues? Do you disavow enforcing 2234 in this way? So, again, if on the facts in front of the board, with the specific patients he said this to, there is a violation of the standard of care in that situation, and of course, this is within the context of repeated acts of negligence, so a single instance alone does not trigger 2234C, if there are repeated violations of the standard of care. So they could be prosecuted for either of those things? They could, just as they could face prosecution for violating the standard of care with respect Where do they get to? But then if the people that are deciding it, where do they get to? They get to voice, I think what they were saying is if the medical board, if that's all they got, and they put charges against them, then it says even if you went on the other side, your reputation is harmed. So that alone would not subject them to prosecution. Unless, if it violates the standard of care, potentially. But by itself, in the abstract, it's difficult to say. What if the doctor that's deciding the case thinks that anyone that, if everyone isn't vaccinated, that's below the standard of care? There are people that actually believe that. You may have heard that. Two responses to that, Your Honor. The first is that if you look through the declarations that are submitted on our side, it's clear that there are two different medical experts who are retained by the board who review the complaints before an accusation is brought. And that process is confidential, and sometimes doctors are not even notified or involved. Similar to bar discipline, right? You get all sorts of crazy complaints filed. It may not be worth bringing it up with the lawyers if it's obvious that there's nothing going on here. So there are two different medical experts who have to go through that process and say that they believe, based on the facts, there's a violation of standard of care before an accusation would even be brought. And then it is, the burden is then on the board, in front of the ALJs, to demonstrate with experts that a standard of care violation has occurred. Plaintiffs can, of course, bring in their own experts to argue that there has not been one. So this is the standard set by the medical community. It's not the board alone that's setting forth this standard. And I think, again, this really illustrates to me the problem with an as-applied challenge here. We don't have, we want to say the specific facts to the specific patient. We just have, we need to be able to say whatever we want about COVID. They want a disease-specific exemption. You know, concerns about things like what is the standard of care apply to all diseases. Every disease was new once. In the 1980s, when dealing with HIV and AIDS, no one said doctors get a free check from filing the standard of care just because the disease is new. So it's always been the case the standard of care is applied. So what was wrong with the predecessor? I can't speak to that. That was the legislature's decision with respect to repealing the statute. Because they thought it was a good idea. And you were defending that last time, right? But then Judge Shub told you, no go. Well, it is worth noting that the issues that arose under that statute were that Judge Shub, the basis of Judge Shub's prior preliminary injunction was a vagueness concern that applied to the specific language of that statute. In particular, it included the phrase contemporary scientific consensus. And the judge felt that was vague. That language is wholly absent from this statute, which just relies on the standard of care, which I think would be difficult to argue is unconstitutionally vague given its longstanding pedigree. So I still don't know if, so do, once the patient enters the room, you have no First Amendment rights? With respect to the care and treatment you provide and the speech that you have to use as part of that, I think the difficulty is it's difficult to say that no speech that a doctor gives is part of care. Obviously, if a doctor says to you, look, I recommend that you take Advil for your pain. Make sure that you don't take more than this amount. I recommend that you try this medication. You can't take it with food. Don't drive when you operate. This is part of treating a doctor. Doctors have to speak as part of treatment. And so when the speech is part of treatment, the state needs to be able to regulate it to ensure that patients are protected. And there may be some line-drawing problems at the margins that are difficult, but that should be brought up on the specific facts of those cases, not in this general disease-specific exemption that plaintiffs want type of case. I see my time's up. If the court has no further questions, we would request that the court affirm. Thank you. Okay. Thank you. First, Judge, if the court wants to consider a challenge on applied, I happen to think that the distinction, especially in the case when you talked about the right to receive information between as applied and not is somewhat... I'm just trying to apply the law, but you're not really helping me on this. Well, I'm sorry to hear that. I think the bottom line is... Maybe you can help me on this one. What exactly is it that these three individual plaintiffs want to do or want to say so I can understand what the challenge is? Because I don't understand what they're telling me they want to do. They want to give information like the kind set out in the declarations in the complaint, which is against the mainstream COVID narrative, and this whole case... Do they want to do it in the context of treating a particular patient? They want to discuss it with patients, and here is where... No, no, that's not my question. Do they want to do it while they are treating a patient? Not necessarily, because... What do you mean not necessarily? Because... I'm trying to pin things down, and I'm having trouble. Okay. What has happened since COVID is there's been really almost a separation between the administration of the vaccine, which you can go to Dodger Stadium to, or any pharmacy, and advice. So what has happened, and I think everyone knows this, you don't have to go to a doctor to get the vaccine. You go to a doctor, and Dr. Verma talked about this in his declaration, in order to get information, because all of the contradictory information put out by the CDC. So what has happened is there's a whole cottage industry of information providing to patients and the public, and that's the whole basis of the COVID information program. Well, if it's information to the public, we know what happens under that. So that's NIFLA. Correct. But I'm talking about what is it your particular clients want to do, and they say they're entitled to do. They want to say that if you're in a certain patient subset, you shouldn't take the vaccine. Wait a minute. Is this in the context of treating a patient? It's in the context of a patient visit, and what NIFLA tells us, NIFLA was not a public speech case. NIFLA was about what you could post, what you had to post in a clinic. The law, I think, is very clear under PICKUP and CONIT. If you give information about marijuana, about sexual-oriented therapy, if you give information about that, if you recommend it, if you make a recommendation, that is protected speech, and I hope that Judge Schroeder will agree with it. I thought that was the holding of CONIT. I think the holding of – If I'm making a – excuse me. If the doctor is making a recommendation as he's treating the patient, how does that fall in your taxonomy? If he's treating the patient, if the incident – let me give you a practical example. If Corey says, I want you to take ivermectin, here's a script for it, that is conduct – his statements are incidental too. If he says, I think it's a good idea for you to consider ivermectin, and that's it, that is speech, that is protected, and the fundamental – So I've got the doctors in there with the patient. Yes. One example is, here's a prescription for horse-level ivermectin, rather than human sort. You say, okay, that one's – doctor can't do that. That's conduct. Correct. Okay. Same patient, same doctor. Doctor says, I recommend that you take horse-level ivermectin. Is that okay or not? That – I have to say, that is fully protected speech under CONIT, and that is fully protected – When the doctor says to the patient, I recommend you take something that's poisonous to you, you say, that can't be disciplined? That's crazy. Can I point out the fact that marijuana is a Schedule I drug, which means there's no – What is it that makes it something that the doctor's telling the patient to do, recommending the patient to do, that is part of treatment or not? I mean, I understand if the doctor gives him a political recommendation, that's not part of treatment. But doctors say all kinds of things using all kinds of words, and they could actually write a prescription, take this, or I'll call your mother. Or they could say, I recommend. Or they could say, you know, it's really up to you, but I think it would be a better idea and you would be healthier in the long run if you did X. I mean, there's this gradation of the way doctors express themselves, and it seems to me that all the way through that spectrum, from actually writing the prescription and saying, I'm going to call your mother if you don't do it, to, I think it would be a very good idea if you did X, that all strikes me as protected speech within the context of treatment. Why am I wrong? Protected speech. I agree, it's protected speech within the context of – No, the doctor – let me say it this way, that it's part of the conduct that comes under this. And that goes back to NIFLA. It's regulated. Yeah. Well, and that goes back to NIFLA. If NIFLA says anything, it says what you can't do is you can't start with the moment the patient walks in the door to the moment the patient walks out of the door and call it unprotected speech. That is the holding of NIFLA. That's not the holding. The holding of NIFLA is they had something posted. Right. But here is the language from NIFLA. Professional speech. As you know, NIFLA basically – We're kind of going in circles. So you're five minutes over. So let me find out if the panel has any additional questions. I have no further questions. Thank you, Your Honor. All right. Thank you both for your argument in this matter. This case will stand submitted, and this court is in recess until tomorrow at 9 a.m. Thank you. All rise. The court for this session stands adjourned.
judges: SCHROEDER, FLETCHER, CALLAHAN